IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (602) 549-0519 | Case No. 3:22-mj-00564-KFR<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Thomas J. King, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(602) 549-0519,** with listed subscriber(s) unknown, (the "Target Cell Phone"), whose service provider is AT&T, a wireless telephone service provider located at 11760 US Highway 1, Suite: 600, North Palm Beach, FL 33408. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

1. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been since February 14, 2001. Prior to that I was a Special Agent with the Immigration and Naturalization Service for five years, and an Inspector with

the United States Customs Service for three years. I am a graduate of Buffalo State College, where I obtained a Bachelor of Science in criminal justice.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 841, 843, and 846 have been committed, are being committed, and will continue to be committed by **Ricky LOKENI**. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations in that LOKENI is using the Target Cell Phone to commit the aforementioned narcotics crimes.

5. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. The United States, including the ATF, is conducting a criminal investigation of Ricky LOKENI regarding possible violations of (a) 21 U.S.C. § 841(a)(1), distribution of and possession with intent to distribute controlled substances, 21 U.S.C. § 843, unlawful use of a communication device to commit and facilitate the

3:22-mj-00564-KFR 2

commission of drug trafficking offenses; and and 18 U.S.C. §§ 846 and 841(a)(1), conspiracy to distribute and possession with intent to distribute controlled substances.

7. In October of 2022, I received information from an ATF Confidential Source (CS) of Information that Elzie ISLEY, AKA "Eben" was engaged in drug trafficking. I am aware that this CS has a felony conviction for DUI and has a pending felony State MICS case. The CS was also investigated by the State of Alaska for making false statements during an insurance claim, in relation to a vehicle accident. The CS has provided accurate and corroborated information in three previous investigations.

8. On October 31, 2022, the CS informed me he/she could introduce me to Elzie ISLEY for the purpose of purchasing of methamphetamine. ISLEY had texted with the CS in the days leading up to November 1, 2022, in effect telling the CS he would obtain the methamphetamine before meeting the CS and me. I reviewed these text messages to confirm the veracity of what the CS told me prior to meeting ISLEY.

9. The CS and I, acting in an undercover capacity, met ISLEY on November 2, 2022, and I purchased 82.5 grams of methamphetamine from ISLEY (which was field tested with a presumptive positive result for methamphetamine). ISLEY mentioned that his source had a large quantity of methamphetamine available. This meeting was consensually monitored and recorded. ISLEY agreed to deal with me directly in the future and provided his phone number, 907-744-3864. Prior to this meeting ATF and FBI Agents on surveillance watched ISLEY leave the PREMISES and drive directly to my location. When my deal with ISLEY was completed, ISLEY returned directly to the PREMISES.

10. I continued to deal with ISLEY and made two additional purchases of methamphetamine from ISLEY in November-December. Each time these purchases were monitored and recorded. I also field tested each substance purchased and obtained a presumptive positive result for methamphetamine. On December 22, 2022, ATF executed a Federal Search Warrant at the residence of Antonio WALLACE, one of ISLEY's suspected sources of methamphetamine. ATF seized approximately 241.5 grams of methamphetamine, a stolen handgun, and $9,780 USD. I spoke to ISLEY a few days after this, and asked ISLEY how it was going. ISLEY replied to the effect that things were not going good. I also asked ISLEY about purchasing more methamphetamine, and he told me he was waiting for more to come in. On December 21, 2022, I texted ISLEY if he was ready, and he replied back to the effect that he was and would be able to sell me methamphetamine the following day.

11. I later obtained phone records/tolls for ISLEY's phone, for a period in December including the raw data (texts/calls) for December 22, 2022. I noted that on the 22nd there are well over 50 contacts (calls and texts) between ISLEY and the Target Cell Phone. From December 13, 2022, through December 24, 2022, there were 212 contacts, and the Target Cell Phone was the third most contacted number during that time. The following is an account of my undercover activity with ISLEY on December 22, 2022, coupled with analysis of ISLEY's phone toll data from that day:

12. On December 22, 2022, I began trying to contact ISLEY around 1:00 PM. ISLEY called me back at 3:57 PM to tell me in effect, he was ready, and we agreed to meet in approximately 30 minutes. At 3:58 PM, ISLEY made an outgoing voice

3:22-mj-00564-KFR 4

call to the Target Cell Phone. Agents with ATF and FBI initiated surveillance on ISLEY shortly after we agreed to meet, and surveillance was maintained on ISLEY throughout this operation.

13. I met ISLEY at approximately 5:02 PM. ISLEY immediately produced approximately 77 grams of methamphetamine for sale. I asked ISLEY if he could obtain more and told him I wanted to purchase at least three more ounces. ISLEY used his cell phone to make a call, to the Target Cell Phone. When the person answered ISLEY said, "hey you got that on you, the other; yeah? I'll be right there….please wait for me, cause I waited on you all day…umm I know, that dude Andrew is there….", and then hung up. ISLEY then told me he could get more. I paid him for the methamphetamine he had given me and agreed to meet him later that evening.

14. After ISLEY departed, surveillance units followed him back to his residence. Once ISLEY was at the residence, surveillance also observed a GMC Terrain bearing AK LP #JWK765 at the residence. At 5:58 PM ISLEY called me. He told me he had just got "one more" (one ounce of methamphetamine) from his source, and the source was going to get more. I agreed to wait until ISLEY's source came back, so I could purchase more methamphetamine from ISLEY. Surveillance Agents later confirmed the GMC Terrain had left ISLEY's residence at some point after that conversation.

15. At 6:32 PM I texted ISLEY and told him if he could get his source to hurry up, I would purchase four ounces of methamphetamine for a total cost of $1800. ISLEY

replied back at 6:40 PM, "I'll call him right now". ISLEY then almost immediately made several outgoing calls to the Target Cell Phone.

16. At 7:05 PM through 7:14 PM, ISLEY had several phone calls with the Target Cell Phone. ISLEY then texted me, "said he's gonna be here in 15 minutes". ISLEY had more phone calls with the Target Cell phone from 7:39 PM through 7:43 PM, and then texted me at 7:44 PM, "…he just told me he was passing Regional".

17. At 7:54 PM ISLEY received an incoming call from the Target Cell Phone. At 7:56 PM Agents conducting surveillance at ISLEY's residence observed the GMC Terrain, AK LP #JWK765 return to ISLEY's residence. At 7:57 PM ISLEY texted me, "he just got here". At 8:07 ISLEY texted, "I got it, just let me get situated and I'll head over to you in a moment".

18. At 8:34 PM, I activated an audio recording/transmitting device, and parked at the O'Reillys Auto Parts Store on Debarr, where ISLEY had just texted he would meet me. ISLEY got in my vehicle, and I then proceeded to purchase 114.5 grams of methamphetamine from him. ISLEY made several comments indicating that his source was Samoan. At one point, when I complained about waiting so long, ISLEY commented that his source was "a 280 pound "US" so when he tells me to wait, I have to wait". In my training and experience, "US", short for USO, is a slang term for a Samoan person.

19. After the meeting with ISLEY, I field tested both substances purchased from ISLEY, and obtained a presumptive positive result for methamphetamine from each substance.

3:22-mj-00564-KFR                      6



20. Later that evening, at approximately 12:45 AM, the GMC Terrain, AK LP #JWK765 was pulled over by APD Officer Ryan Piscoya because of window tint believed to be too dark. Officer Piscoya identified the driver as Ricky LOKENI, and the only passenger as Tiera Siulua. The vehicle is registered to Roxanne Manglona. LOKENI verbally provided an address of 7342 Zurich. I later received intelligence check results from ATF Investigative Assistant Bill Tunilla that link Ms. Manglona and LOKENI as being in a relationship together. I also noted that Ricky LOKENI does in fact appear to be of Samoan descent and is listed in APSIN as having a weight of 302 pounds.

21. IA Tunilla also queried open public source data bases Accurint and CLEAR and both indicate LOKENI is the current subscriber for the Target Cell Phone. LOKENI also used the Target Cell Phone number on his last PFD application. The Target Cell Phone was also listed for LOKENI in ACOMS on 09/17/2021

22. On December 29, 2022, I spoke with a representative from the AT&T Wireless Subpoena Compliance Division. The representative confirmed AT&T is the service provider for the Target Cell Phone.

23. On December 30, 2022, I received information from DEA that recently received records regarding the Target Cell Phone indicate that the subscriber is Siasaga I. ULA, and the address of record for the subscriber is 7438 W. Fleetwood Ln., Glendale, AZ AND 7528 W. Irwin Ave, Laveen, AZ. I had previously received information from IA Tunilla that Mr. ULA is believed to be LOKENI's relative.

24. Based upon the above facts, your Affiant believes that Ricky LOKENI is in possession of the Target Cell Phone, and he uses it to participate in an ongoing drug conspiracy.

25. Based on my training and experience it is common for drug traffickers to use multiple locations to store drugs and currency and to purchase and/or sell drugs from multiple individuals. The purpose of this warrant is to assist surveillance in gathering evidence of these locations and drug sources and/or buyers that are involved with LOKENI. This warrant will be used to further confirm and track LOKENI's movements and locations before and after undercover activity with ISLEY in addition to surveillance of his other illegal activities. Physical surveillance alone on LOKENI has been unsuccessful to date because his exact residence has not been determined at this time, and it is suspected that he is using unknown locations to store controlled substances and currency. It is also believed that even though LOKENI has reported a permanent residence to an APD Officer, the vehicle he has been known to drive has only been seen at the residence one time after numerous blocks of surveillance were conducted there. ATF Agents have conducted surveillance at numerous residences linked to LOKENI and/or his relatives and have not been able to physically locate LOKENI since December 22, 2022.

26. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide

service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

27. Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available.

28. Based on my training and experience, I know that AT&T can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at

the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

29. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

30. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).



31. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

32. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

33. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

//

//

//

Respectfully submitted,

**THOMAS KING** Digitally signed by THOMAS KING
Date: 2022.12.30 11:10:57 -09'00'

THOMAS J. KING
Senior Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on this  30th  day of December 2022.

_____
HON. KYLE F. REARDON
United States Magistrate Judge
District of Alaska

December 30, 2022

3:22-mj-00564-KFR                               12